FILED BY _____ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

05 MAY 19 PM 12: 32

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

| | |
|---|---|
| CLEOPHUS TRIBBLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 02-2949 Ml/V |
| MEMPHIS CITY SCHOOLS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER GRANTING DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Amended Motion for Summary Judgment, filed April 4, 2005. Plaintiff responded in opposition on May 9, 2005.[1] For the following reasons, Defendant's motion is GRANTED.

**I. BACKGROUND AND RELEVANT FACTS**

The instant case arises out of Defendant Memphis City Schools' termination of the employment of Plaintiff Cleophus Tribble for unsatisfactory performance. In his Complaint filed December 12, 2002, Plaintiff, who is African-American, alleges

---

[1] Defendant originally moved for summary judgment on December 5, 2003. On September 9, 2004, the Court entered an order denying, without prejudice, Defendant's Motion for Summary Judgment because the Court had re-opened discovery. (Order Denying Def.'s Mot. for Summ. J. as Moot, September 9, 2004 (Docket No. 27).) The Court subsequently extended the deadline to file dispositive motions until April 4, 2005. Defendant has incorporated its original Motion for Summary Judgment into its Amended Motion for Summary Judgment.

that he was discriminated against due to his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*

Plaintiff is a retired Sergeant, First Class, from the United States Army. He was employed as a Military Instructor for the Memphis City Schools' Junior Reserve Officer Training Corps ("JROTC") program from 1994 until he was terminated at the end of the 2000-01 school year.

JROTC instructors are former military personnel that are selected and certified by the U.S. Army to teach JROTC classes. Each participating school has a Military Instructor and Senior Army Instructor on-site. The JROTC program also maintains a local headquarters in Memphis, Tennessee staffed by senior officers including a Director of Army Instruction.

At the beginning of the 2000-01 school year, Plaintiff was assigned to teach a JROTC class at Craigmont High School ("Craigmont") in Memphis, Tennessee. Beginning on August 23, 2000, Lieutenant Colonel ("Lt. Col.") John G. Winchell was the Director of Army Instruction for the Memphis City Schools. On November 27, 2000, Lt. Col. Richard Olsen was assigned to be the Senior Army Instructor at Craigmont. Lt. Col. Olsen was Plaintiff's immediate supervisor.

While at Craigmont, Lt. Col. Olsen submitted reports to Lt. Col. Winchell stating that:

2

> [Plaintiff] constantly yelled, threatened and had little control in his classroom. He would tell me in front of the students that they were bad kids and little or nothing could be done with them. The students did not respond to him well at all. In addition, Ms. Sandra Hodge [the principal] was so frustrated with the program and with SFC Tribble, that she welcomed any improvement.

(Aff. of John G. Winchell ("Winchell Aff."), Ex. A, attached as Ex. 3 to Def.'s Amended Mot. for Summ. J.)[2] Additionally, Plaintiff and Lt. Col. Olsen had conflicts while he was an instructor at Craigmont. On one occasion, Lt. Col. Olsen asked Plaintiff to remove his non-military jacket from his uniform. While discussing that incident the following day, Plaintiff admits that he asked Lt. Col. Olsen to "stop acting like an asshole." (Winchell Aff. ¶ 5; Pl.'s Jan. 13, 2004, Mem. of Law in Resp. to Def.'s Mot. for Summ. J. at 18; Pl.'s May 9, 2005, Mem. of Law in Resp. to Def.'s Mot. for Summ. J. at 3.)

In January of 2001, Lt. Col. Winchell transferred Plaintiff to Kingsbury High School ("Kingsbury").[3] The Senior Army Instructor and Plaintiff's supervisor at Kingsbury was Captain ("Cpt.") Jesse Carpenter. The principal at Kingsbury was Mr. Alex Hooker. On March 1, 2001, Defendant contends that Lt. Col.

---

[2] Plaintiff does not deny that such reports were made, but disputes the truth of the reports. (Pl.'s May 9, 2005, Stmt. of Disp. and Undisp. Mat. Facts in Opp'n to Def.'s Mot. for Summ. J., ¶ 6.)

[3] Plaintiff contends that a Lt. Col. Zimmerman, rather than Lt. Col. Winchell, directed Plaintiff to report to Kingsbury.

3

Winchell met with Plaintiff and Cpt. Carpenter to counsel Plaintiff regarding his job performance. Lt. Col. Winchell memorialized this meeting in a Memorandum of Counseling. (Winchell Aff., Ex. B.)[4] The March 1, 2001, memorandum chronicles problems with Plaintiff's performance at Craigmont and Kingsbury and concludes that it was Lt. Col. Winchell's intent to terminate Plaintiff. (Id.)

On March 27, 2001, Plaintiff, Principal Hooker, and Cpt. Carpenter met to discuss Plaintiff's conduct. After the meeting, Principal Hooker told Cpt. Carpenter that Plaintiff would not be allowed to teach at Kingsbury if his classroom management did not improve.[5] On May 22, 2001, Principal Hooker sent an e-mail message to Lt. Col. Winchell requesting that Plaintiff be reassigned. (Winchell Aff., Ex. C.) The May 22, 2001, e-mail further chronicled Principal Hooker's dissatisfaction with Plaintiff's work performance at Kingsbury. It is undisputed that Cpt. Carpenter concurred in Principal Hooker's request that Plaintiff be reassigned.

According to his sworn affidavit, Lt. Col. Winchell determined that Plaintiff should not be offered a teaching contract for the following year. His decision was based upon the

---

[4]Plaintiff contends that this meeting did not take place and that the memo is a fabrication.

[5]Plaintiff contends that, on March 27, 2001, Plaintiff was informed by Cpt. Carpenter that he was being terminated.

4

fact that the principals and Senior Army Instructors at two different high schools had requested that Plaintiff be removed from their school, along with Plaintiff's insistence that he was doing nothing wrong and refusal to take criticism to heart during several oral counseling sessions. (Id., ¶ 14.)  Defendant contends that Lt. Col. Winchell met with Plaintiff in his office, on an unspecified date, and informed him that he would not be offered a position for the 2001-02 school year.[6] (Id., ¶ 15.)  A Department of the Army memorandum dated May 10, 2001, indicates that Plaintiff was terminated effective June 5, 2001, for "ineffective JROTC teaching skills." (Pl.'s May 9, 2005, Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., Ex. 1.)

Plaintiff contends that Lt. Col. Robert Stuart, who is Caucasian, was treated more favorably than he was by Defendant with respect to his termination.  Lt. Col. Stuart was the Senior Army Instructor at Hillcrest High School in Memphis, Tennessee when Lt. Col. Winchell became the Director of Army Instruction in August of 2000.  Lt. Col. Winchell was his direct supervisor. According to Lt. Col. Winchell's affidavit, Lt. Col. Stuart had difficulty motivating his students and maintaining good order and

---

[6] Lt. Col. Winchell contends that he requested that Plaintiff resign, and told Plaintiff that if he did not, then he would recommend that Plaintiff be terminated.  According to Lt. Col. Winchell's affidavit, Plaintiff refused to resign. Plaintiff contends that he was not offered the opportunity to resign.

5

discipline in his classroom, but was never disrespectful or insubordinate to him. Lt. Col. Winchell determined that Lt. Col. Stuart could not effectively teach in the classroom and requested that he resign, which Lt. Col. Stuart did effective January 23, 2002.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

6

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

### III. ANALYSIS

Plaintiff asserts a claim of race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 28 U.S.C. 2000e et seq. In particular, Plaintiff claims that a similarly situated Caucasian employee was given progressive discipline and the opportunity to resign before being terminated. Defendant has moved for summary judgment regarding Plaintiff's claim.

Race discrimination claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and refined in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).

7

Under this approach, a plaintiff must first establish a *prima facie* case of discrimination. Burdine, 450 U.S. at 252. Establishing a *prima facie* case creates a rebuttable presumption that the employer engaged in unlawful discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). Once the plaintiff has established a *prima facie* case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. Burdine, 450 U.S. at 252-53. The burden is not onerous. An employer will satisfy its burden as long as it articulates a valid rationale for its decision. Hartsel v. Keys, 87 F.3d 795, 800 (6th Cir. 1996).

If the employer meets this burden, the plaintiff may still prevail if he shows that the reasons offered by the defendant are a pretext for discrimination. Burdine, 450 U.S. at 253. To prove pretext, the plaintiff must introduce admissible evidence to show "that the proffered reason was not the true reason for the employment decision" and that racial animus was the true motivation driving the employer's determination. Hicks, 509 U.S. at 508. Throughout the analysis, the ultimate burden of proof remains with the plaintiff. Id. at 511.

In this case, Plaintiff contends that Lt. Col. Stuart received more favorable treatment because he was given progressive discipline and the opportunity to resign before being terminated. Defendant contends that Plaintiff cannot establish a

8

*prima facie* case of discrimination because Plaintiff and Lt. Col. Stuart were not similarly situated, and even if they were, that Lt. Col. Stuart was not treated more favorably than Plaintiff. Defendant further contends that Plaintiff's poor job performance provided a legitimate non-discriminatory reason for Plaintiff's termination, which Plaintiff cannot show was pretext for discrimination. The Court will address these contentions in turn.

### A. *Prima Facie* Case

To establish a *prima facie* case of race discrimination, a plaintiff must show that: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class or was treated differently from a similarly situated employee outside his protected class. Warfield v. Lebanon Corr. Inst., 181 F.3d 723, 728-29 (6th Cir. 1999). Here, there is no dispute that Plaintiff was a member of a protected class based upon his race (African-American), that he suffered an adverse employment action (termination), and that he was qualified for the position of JROTC instructor. The parties dispute whether Plaintiff and Lt. Col. Stuart were similarly situated employees and whether being denied the opportunity to resign amounts to an adverse employment action.

9

In determining whether employees are similarly situated, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'" Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)(citation omitted). Therefore, in the disciplinary context, the comparable employees outside of Plaintiff's protected class "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).

Plaintiff fails to point to sufficient evidence in the record to create a genuine issue of material fact regarding whether Plaintiff and Lt. Col. Stuart were similarly situated. Although Lt. Col. Winchell did have supervisory authority over both Plaintiff and Lt. Col. Stuart, the two employees had different immediate supervisors.[7] Moreover, Lt. Col. Stuart was a higher ranked employee than Plaintiff.[8] Further, the record

---

[7] Plaintiff was supervised directly by Lt. Col. Olsen at Craigmont and by Cpt. Carpenter at Kingsbury, whereas Lt. Col. Stuart was supervised directly by Lt. Col. Winchell.

[8] Lt. Col. Stuart was a Senior Army Instructor, whereas Plaintiff was a Military Instructor or Director of Army Instruction, a position that is supervised by a Senior Army Instructor.

10

reflects that Plaintiff was accused of different and more serious misconduct than was Lt. Col. Stuart during the relevant time frame.[9]

Additionally, Plaintiff fails to establish that being denied the opportunity to resign rather than be terminated rises to the level of an adverse employment action. In order to prove that he has suffered an adverse employment action, a plaintiff must show that he suffered "a materially adverse change in the terms of [his] employment." White v. Burlington Northern & Santa Fe R.R. Co., 364 F.3d 789, 797 (6th Cir. 2004)(citing Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 885-87 (6th Cir. 1996)). A "mere inconvenience or an alteration of job responsibilities" or a "bruised ego" is not enough to constitute an adverse employment action. Id. (citations omitted). Even assuming that Lt. Col. Stuart, but not Plaintiff, was offered the opportunity to resign

---

[9] Both employees were accused of being unable to properly discipline and motivate their students, however, Plaintiff was also alleged to have been insubordinate to his supervisors and to have yelled at and threatened his students during the 2000-01 school year. Additionally, unlike Lt. Col. Stuart, the principals and two Senior Army Instructors from two different high schools asked for Plaintiff's reassignment or termination during that school year. Although there is evidence in the record that Lt. Col. Stuart had been insubordinate to previous supervisors and had engaged in inappropriate conduct while he was an instructor at Hamilton High School in 1999, that conduct occurred well before his resignation, did not involve Lt. Col. Winchell, and was not cited by Lt. Col Winchell as a reason for requesting his resignation. (Pl.'s Jan. 13, 2004, Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. at 7, Exs. 9-12; Aff. of John G. Winchell, ¶¶ 16-18.)

11

rather than be terminated, the denial of such an opportunity does not amount to a materially adverse change in the terms of Plaintiff's employment.[10]  Accordingly, Plaintiff has failed to establish a *prima facie* case of race discrimination.

### B. Legitimate Non-Discriminatory Reason

Even assuming that Plaintiff could establish a *prima facie* case of discrimination, however, Defendant has articulated a legitimate non-discriminatory reason for terminating Plaintiff.  Specifically, Defendant has set forth evidence showing that Plaintiff was terminated due to poor teaching performance and complaints from his current and previous supervisors.  Accordingly, Plaintiff can only prevail if he shows that Defendant's proffered reason was a pretext for discrimination.

To prove pretext, Plaintiff must show: (1) that the employer's reasons for his termination had no basis in fact; (2) that the employer's proffered reason did not actually motivate the decision; or (3) that the employer's reasons were insufficient to motivate the decision.  Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1084 (6th Cir. 1994).  Plaintiff fails to meet this burden.  It is undisputed that the

---

[10] Plaintiff also contends that he was given less progressive discipline than Lt. Col. Stuart.  However, the disciplinary warnings received by Lt. Col. Stuart relate to conduct which occurred before the 2000-01 school year, the period relevant to Plaintiff's claims. (See Pl.'s May 9, 2005, Mem. of Law in Resp. to Def.'s Mot. for Summ. J. at 10, Exs. 4-6.)

12

principals and Senior Army Instructors at Craigmont and Kingsbury requested either his reassignment or termination. Accordingly, Defendant's decision to terminate Plaintiff had a basis in fact. Moreover, Plaintiff has not shown that his conduct did not actually motivate or was insufficient to motivate Defendant's decision to terminate him.

Although Plaintiff denies that he engaged in some of the conduct alleged by Defendant, the honest belief rule favors Defendant. As adopted by the Sixth Circuit, the honest belief rule provides that "as long as an employer has an <u>honest belief</u> in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." <u>Majewski v. Automatic Data Processing</u>, 274 F.3d 1106, 1117 (6th Cir. 2001)(emphasis added)(citation omitted). "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied on the particularized facts that were before it at the time the decision was made." <u>Id.</u> (citation omitted).

The record shows that Defendant based its decision to terminate Plaintiff on the complaints received from previous principals and Senior Army Instructors and Plaintiff's unwillingness to accept criticism. Therefore, Defendant's non-discriminatory reason was predicated on an honest belief that

13

Plaintiff was not adequately performing his teaching duties.[11] Accordingly, the Court finds that no genuine issues of material fact exist and therefore summary judgment is GRANTED regarding Plaintiff's claim for race discrimination.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's case is DISMISSED.

So ORDERED this 19th day of May, 2005.

*/s/ Jon P. McCalla*
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

---

[11] Plaintiff points to evidence in the record to show that his job performance was satisfactory prior to the 2000-01 school year. However, Plaintiff fails to point to any evidence in the record to indicate that he was terminated for any behavior that occurred prior to the 2000-01 school year. Rather, the undisputed evidence indicates that Plaintiff was terminated due to his performance during the 2000-01 school year. Accordingly, the evidence of good performance prior to the 2000-01 school year to which Plaintiff points is not material to his claim.

14

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 52 in case 2:02-CV-02949 was distributed by fax, mail, or direct printing on May 20, 2005 to the parties listed.

---

Cleophus Tribble
5403 Autumn Brook Drive
Memphis, TN 38141

Michael R. Marshall
STOKES BARTHOLOMEW EVANS & PETREE, P.A.
1000 Ridgeway Loop Rd.
Ste. 200
Memphis, TN 38120

Peggy J. Lee
LEE LAW FIRM
147 Jefferson
Ste. 406
Memphis, TN 38103

Ernest G. Kelly
STOKES BARTHOLOMEW EVANS & PETREE, P.A.
1000 Ridgeway Loop Rd.
Ste. 200
Memphis, TN 38120

Prince C. Chambliss
STOKES BARTHOLOMEW EVANS & PETREE, P.A.
1000 Ridgeway Loop Rd.
Ste. 200
Memphis, TN 38120

Honorable Jon McCalla
US DISTRICT COURT